**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**MICHAEL F. RICHMOND**                                                                **Plaintiff**

**v.**                                    **No. 4:14-CV–276-JLH-JJV**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration**                                              **Defendant**

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition has been sent to U.S. District Judge J. Leon Holmes. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

### Recommended Disposition

Michael Richmond proceeds *pro se*,[3] seeking judicial review of the denial of his application

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

[3] Mr. Richmond was represented during agency proceedings.

for disability income benefits (DIB).[4]  Mr. Richmond alleged disability beginning June 1, 2009, but the Commissioner gave Mr. Richmond the benefit of his date last insured and considered whether Mr. Richmond was disabled on June 30, 2008.  Mr. Richmond based disability on progressive muscle disease.[5]

**The Commissioner's decision**.   Considering June 30, 2008, the Commissioner's ALJ identified an undiagnosed neurological condition as a severe impairment,[6] but determined Mr. Richmond could do some light work.[7]  Because a vocational expert testified that a person with Mr. Richmond's ability to work could do his past work,[8] the ALJ denied Mr. Richmond's application.[9]

After the Appeals Council denied a request for review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11]  Mr. Richmond filed this case to challenge the decision.[12]  In reviewing the decision, the court must determine whether substantial

---

[4]SSA record at p. 84 (applying for DIB on Oct. 6, 2011, and alleging disability beginning June 1, 2009).

[5]*Id*. at p. 119.

[6]*Id*. at p. 14 (identifying undiagnosed neurological condition causing lower extremity weakness, spasticity, and left foot drop as a severe impairment).

[7]*Id*. at p. 16 (placing the following limitations on light work: (1) work involving occasional stooping, crouching, crawling and kneeling; and (2) work that does not involve unprotected heights, moving machinery, or open flames).

[8]*Id*. at p. 37.

[9]*Id*. at pp. 19-21.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

evidence supports the decision and whether the ALJ made a legal error.[13]

      **Applicable legal principles**.  In reviewing a decision denying an application for DIB, the court must determine whether the decision is supported by substantial evidence; that is, whether a reasonable mind would accept the evidence as adequate to support the decision.[14]  To receive DIB, a person must show he was disabled before the expiration of his insured status.[15]  A person must prove disability with medical evidence that shows the existence of a medical impairment which can reasonably be expected to produce the symptoms alleged and which would lead to a conclusion that the person is disabled; a person's subjective allegations are not enough to prove he is disabled.[16]  In attempting to prove disability, the most probative evidence is medical evidence generated on or before insured status expires, but subsequent medical evidence may be relevant if it bears on the

---

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[15]*See* 42 U.S.C. §§ 416(i), 423(c); *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

[16]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

severity of the person's condition before the expiration of insured status.[17]

**The evidence shows no disabling symptoms before expiration of insured status**.  Most of the medical evidence was generated after insured status expired.  The evidence reflects symptoms that first manifested before insured status expired on June 30, 2008; specifically, weakness and spasticity in the left leg, and left foot drop.  Mr. Richmond attributes these symptoms to an August 2007 stroke.[18]  Although the symptoms manifested before June 30, 2008, proving disability requires proof of disabling symptoms — symptoms that prevent the claimant from doing any kind of substantial gainful activity.[19]  The medical evidence does not make this showing.

The more probative evidence — generated before June 30, 2008 — supports light work.  That evidence shows a rheumatologist treated Mr. Richmond for Reiter's Syndrome for many years.  Reiter's Syndrome, also known as reactive arthritis, is a form of arthritis that affects the joints, eyes, urethra, and skin.[20]  Mr. Richmond doesn't rely on Reiter's Syndrome as a basis for disability;[21] instead, he relies on left leg weakness.  At his hearing, Mr. Richmond suggested he suffered bone fractures in 2008 from falling, but documented fractures occurred in March 2010.[22]  By then, insured

---

[17]*Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).

[18]SSA record at pp. 168-70, 174, 176, 179.  There are other references indicating the stroke occurred on June 27, 2007.  Docket entry # 16, p. 4.  The difference in dates has no bearing on the result in this case.

[19]Being disabled means that a person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[20]Rebecca J. Frey, 5 The Gale Encyclopedia of Med. 3728 (4th ed.).

[21]SSA record at pp. 26-27 ("I don't think Reiter's Syndrome should factor in.  It's an autoimmune disease.  It has nothing to do with my neurological condition. … I think that would just muddy the issues.  I've had that since I was 20 years old.").

[22]*Id*. at pp. 364 & 458.

status had expired.

The month before expiration, Mr. Richmond's rheumatologist found a restricted range of motion in the neck and adjusted prescribed medication.[23]  At that time, Mr. Richmond had some left-leg weakness, but he still traveled throughout the United States producing religious dramas.[24]  The same month, a cardiologist examined Mr. Richmond and had no negative medical finding.[25]

Medical evidence generated shortly after expiration of insured status indicates left-leg weakness progressed around May 2009.[26]  The rheumatologist referred Mr. Richmond to a neurologist.  In June 2009, the neurologist described Mr. Richmond's gait as "spastic, left leg being more affected than right."[27]  The earlier restriction in the neck had resolved.[28]  The neurologist ordered diagnostic testing, but test results did not explain the spasticity of the legs.[29]  In December 2009, Mr. Richmond's primary care physician observed a normal gait.[30]

According to medical experts, Mr. Richmond could do light work as of his date last insured, based on Rieter's Syndrome and a possible stroke.[31]  The medical evidence doesn't confirm the occurrence of a stroke, but November 2007 diagnostic imaging of the brain showed an abnormality

---

[23]*Id*. at p. 187.

[24]*Id*.

[25]*Id*. at pp. 381- 82.

[26]*Id*. at p. 185.

[27]*Id*. at p. 203.

[28]*Id*. at p. 203.

[29]*Id*. at p. 204-05.

[30]*Id*. at p. 466.

[31]*Id*. at pp. 218 & 230.

consistent with stroke, small vessel disease, and the like.[32]  In March 2009, over eight months after expiration of insured status, the neurologist diagnosed a "[p]robable right frontal stroke causing mild hemiparetic gait."[33]  The descriptor "mild" suggests no disabling limitation.  Mr. Richmond was never treated for a stroke.  The ALJ gave Mr. Richmond the benefit of a mild hemiparetic gait before expiration of insured status, by requiring work involving occasional stooping, crouching, crawling and kneeling; and excluding work involving unprotected heights, moving machinery, or open flames.

The vocational expert classified Mr. Richmond's past work as a playwright as sedentary work and confirmed that a person can work as a playwright with the required postural and work-hazard limitations.[34]  Mr. Richmond claims his work as a playwright was too remote to be considered as past relevant work, but his pleadings indicate he wrote and produced religious dramas from 1989 to 2010.[35]  That is not too remote.  Mr. Richmond's treatment records indicate his business declined because of the economy, rather than health.[36]  Mr. Richmond testified that being a playwright isn't a usable skill — because it's a matter of luck[37] — but Mr. Richmond nevertheless worked as a playwright for several years.  A person who can do his past work is not disabled under social security law.[38]

---

[32]*Id*. at pp. 195-96.

[33]*Id*. at p. 182.

[34]*Id*. at pp. 37-38.

[35]*Id*. at pp. 120, 136-38.

[36]*Id*. at p. 323 (he complained about the economy and his work) & p. 349 (business struck hard by recession).

[37]*Id*. at p. 38.

[38]20 C.F.R. § 404.1520(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

## Conclusion

A reasonable mind would accept the evidence as adequate to support the decision because: (1) the medical evidence reflects no disabling symptoms as of June 30, 2008, (2) the ALJ accounted for left-leg weakness and left-foot drop by requiring postural limitations and excluding work hazards, and (3) a vocational expert confirmed that a person with Mr. Richmond's limitations could have done his past work.  Thus, substantial evidence supports the decision.  The ALJ made no legal error.

## Recommendation

For these reasons, the undersigned magistrate judge recommends denying Mr. Richmond's request for relief (docket entry # 2) and affirming the Commissioner's decision.

Dated this 15th day of May, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE